**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TONY LOVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  18 C 6084 |
| | ) | |
| ILLINOIS DEPARTMENT OF CORRECTIONS,) | | Judge Rebecca R. Pallmeyer |
| JOHN R. BALDWIN, DR. STEVE MEEKS, | ) | |
| MELVIN HINTON and WEXFORD, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

NOW COMES the Plaintiff, TONY LOVE, by and through his attorneys, OTUBUSIN & ASSOCIATES, P.C., and hereby brings this Complaint for violation of civil rights pursuant to 42 USC §1983 and the Eighth and Fourteenth Amendments to the United States Constitution against the ILLINOIS DEPARTMENT OF CORRECTIONS (hereinafter, "IDOC"), JOHN R. BALDWIN, DR. STEVE MEEKS, MELVIN HINTON  and WEXFORD, and alleges as follows:

**JURISDICTION AND VENUE**

1. This action arises under the United States Constitution and the Civil Rights Act pursuant to 42 U.S.C §1983 and the Eighth and Fourteenth Amendments to the United States Constitution, wherein Plaintiff seeks to redress deprivations by the Defendants.

2. Jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

3. At all times mentioned herein, all defendants were acting under color of state law, or violated rights secured to plaintiff by the Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United States.

4. This court has supplemental jurisdiction over those claims asserted under state law by virtue of 28 U.S.C. §1367.

5. Venue is founded in this judicial district upon 28 U.S.C §1391 as the acts complained of arose in this district.

## THE PARTIES

4. Plaintiff TONY LOVE is an inmate of IDOC at Robinson Correctional Center. (hereinafter, "Robinson"). Plaintiff has a severe mental health condition and had not received treatment for this serious medical condition from Defendants until the filing of his original complaint on September 5, 2018.

5. On September 9, 2018, Plaintiff was transferred from Stateville Correctional Center (hereinafter, "Stateville") to Robinson.

6. Defendant IDOC is, and at all times, relevant to this lawsuit was, a government agency in charge of the administration of all Illinois State prisons.

7. Defendant JOHN R. BALDWIN [hereinafter, "Baldwin"] is the Acting Director of IDOC and has management and administrative responsibilities at IDOC, including Plaintiff's medical treatment and care at Stateville. Baldwin is sued in his official capacity.

8. Defendant DR. STEVE MEEKS [hereinafter, "Meeks"]is the Chief of Health Services of IDOC and has management and administrative responsibilities at IDOC, including Plaintiff's medical treatment and care at Stateville. Meeks is sued in his official

capacity.

9. Defendant MELVIN HINTON [hereinafter, "Hinton"] is the Acting Statewide Mental Health Supervisor of IDOC and has management and administrative responsibilities at IDOC, including Plaintiff's medical treatment and care at Stateville. Hinton is sued in his official capacity.

10. Defendant WEXFORD is, and at all times relevant to this lawsuit was, a corporation engaged in the business of providing health care professionals and services to correctional facilities in Illinois, including Stateville.

## STATEMENT OF FACTS

11. The allegations made in this complaint are indicative of the serious and prevalent problems with the IDOC's entire system of providing adequate medical treatment to prisoners. In the last five years, several hundreds of cases have been filed in Illinois alleging inadequate prison conditions, including inadequate medical treatment. The Honorable Milton Shadur of the Northern District of Illinois commented on the prevalence of prisoner cases complaining of inadequate medical treatment in an opinion issued on August 30, 2011 and stating as follows:

> If the random assignment of 42 U.S.C. §1983 lawsuits by Illinois prisoners echoes the totality of such filings in this judicial district (as seems likely), the volume of such actions charging Dr. Parthasarathi Ghosh with constitutional violations under the Estelle v. Gamble rubric would appear to bespeak a litigation cottage industry. And if even a fraction of those actions have merit . . . Dr. Ghosh would seem to be a walking malpractice action.[1]

12. These cases illustrate the recurring issues in the Illinois prison system which are

_____

[1]Piggott v.Ghosh, et al.,2011 U.S. Dist. LEXIS 97171,*1 (N.D. Ill. Aug. 30, 2011).

Page 3 of 14

having a detrimental effect on inmates in need of medical attention. These inmates have no ability to choose a healthcare provider or otherwise exercise any choice in healthcare decisions. Instead, the inmates are forced to accept the care provided by Wexford, IDOC, and those entities' employees, which is wholly inadequate and substandard, and left to grieve to a skeptical and unabashedly unsympathetic audience.

13. Mental health illness is one of the troubling illnesses in the United States of America as of today, and, more so, in the State of Illinois. If left untreated, patients can cause harm to themselves and to those around them.

14. Plaintiff, at all relevant times, was incarcerated at IDOC at Stateville on July 18, 2018 and was recently moved to IDOC at Robinson on September 9, 2018.

15. Plaintiff is a 45-year old African American who was diagnosed with bipolar depression and has suffered severe mental illness throughout his life.

16. Plaintiff's mental illness was diagnosed prior to incarceration, and Plaintiff received treatment for his condition prior to his incarceration.

17. Stateville maintains a catalog of inmates' various medical conditions and medical needs, which include a database of inmates suffering from mental illness.

18. Prior to his incarceration, and, to treat his mental illness, Plaintiff was prescribed and took the following medication: Zoloft, 100 mg; Haldol, 5 mg and Cogentin, 5 mg.

19. Ever since he was incarcerated, Plaintiff has repeatedly requested treatment and medication for his mental illness and bipolar depression.

20. Plaintiff kept writing to the Psychiatric Department at Stateville to request treatment and medication.

21. Plaintiff wrote several grievances to his Counselor.

22. Plaintiff filled out twelve medical forms and sent them through his Counselor to the Stateville administration.

23. Plaintiff received no response and was refused treatment or medication for 35 days.

24. Plaintiff was on a lock down for 24 hours a day, could not sleep, suffered emotional distress, had jumping nerves, could not seat still, had headache and severe migraines, was always pacing back and forth in his cell, and was freaking out his roommate,

25. Plaintiff feared that he could be a danger to himself and his roommate because he was hearing voices in his head all the time.

28. Despite every effort that Plaintiff made to get medical attention and medication, he was refused treatment.

29. He had exhausted all his options within the prison system, and only very recently, since filing his original lawsuit on September 5, 2018, was he transferred to Robinson and began to receive treatment and medication.

## FIRST CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS [42 U.S.C. §1983]
### EIGHTH AMENDMENT
### (Against All Defendants)

30. Plaintiff hereby incorporates and realleges paragraphs 1 through 29 of this Complaint as though fully set forth herein.

31. Plaintiff alleges that he has had a serious mental condition for which he was entitled to treatment at least as of July 20, 2018 when he was incarcerated at Stateville.

32. As alleged herein and above, Defendant IDOC maintained a policy and practice of denying necessary treatment to inmates for their medical conditions until these inmates file lawsuits against IDOC challenging Defendant's neglect and refusal of treatment.

33. Based on this policy, Plaintiff was irreparably harmed as a result of Defendant's failure to provide necessary care and treatment to inmates.

34. This denial of treatment constitutes deliberate indifference as set forth in <u>Estelle v. Gamble,</u> 429 U.S. 97 (1976).

35. Defendant's policies to delay and to deny care have been intentionally promulgated and executed for financial reasons in complete disregard for the medical needs of Plaintiff.

36. The policy was not promulgated on the basis of legitimate differences in medical opinion but solely on the basis of cost considerations and in disregard of the serious medical needs of inmates.

37. Defendants Baldwin, Meeks and Hinton were, at all relevant times, employed by the State of Illinois and acted under color of law to deprive Plaintiff constitutionally protected rights including, but not limited to, the right to be free of cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

38. As alleged herein and above, the failure of all the Defendants including Wexford to treat Plaintiff for his mental illness constitutes a violation of Plaintiff's Eighth Amendment rights because Defendants denied and delayed treatment with deliberate indifference to Plaintiff's serious medical needs.

39. At all times relevant Defendants acted under color of law to delay and deny Plaintiff proper medical care for his mental illness.

40. Defendants knew or should have known that Plaintiff had mental illness. As a result, Defendants knew or should have known that denying and delaying a treatment was an excessive risk to Plaintiff's health.

41. Defendants consciously disregarded this risk in violation of Plaintiff's Eighth Amendment rights.

42. Defendants' failure to provide treatment for Plaintiff's mental illness was not based on legitimate differences in medical opinion but on deliberate indifference and conscious disregard for Plaintiff's serious medical needs.

43. Defendant Baldwin, at all times relevant to this case, acted in his individual capacity and under the color of state law, with deliberate indifference to Plaintiff's serious medical needs by failing to approve treatment for Plaintiff for his mental illness. Defendant Baldwin knew that denying and delaying mental illness treatment was an excessive risk to Plaintiff's health. Defendant consciously disregarded this risk by repeatedly failing to approve any treatment or medication until September 9, 2018 after Plaintiff had filed the instant lawsuit. Defendant's failure to approve any treatment or medication is a violation of Plaintiff's Eighth Amendment rights.

44. Defendant Meeks, at all times relevant to this case, acted in his individual capacity and under the color of state law, with deliberate indifference to Plaintiff's serious medical needs by failing to approve treatment for Plaintiff for his mental illness. Defendant Meeks knew that denying and delaying mental illness treatment was an excessive risk to Plaintiff's health. Defendant consciously disregarded this risk by

repeatedly failing to approve any treatment or medication until September 9, 2018 after Plaintiff had filed the instant lawsuit. Defendant's failure to approve any treatment or medication is a violation of Plaintiff's Eighth Amendment rights.

45. Defendant Hinton, at all times relevant to this case, acted in his individual capacity and under the color of state law, with deliberate indifference to Plaintiff's serious medical needs by failing to approve treatment for Plaintiff for his mental illness. Defendant Hinton knew that denying and delaying mental illness treatment was an excessive risk to Plaintiff's health. Defendant consciously disregarded this risk by repeatedly failing to approve any treatment or medication until September 9, 2018 after Plaintiff had filed the instant lawsuit. Defendant's failure to approve any treatment or medication is a violation of Plaintiff's Eighth Amendment rights.

46. Defendant Wexford, at all times relevant to this case, acted with deliberate indifference to Plaintiff's serious medical needs by failing to approve treatment for Plaintiff for his mental illness. Defendant Wexford knew that denying and delaying mental illness treatment was an excessive risk to Plaintiff's health. Defendant consciously disregarded this risk by repeatedly failing to approve any treatment or medication until September 9, 2018 after Plaintiff had filed the instant lawsuit. Defendant's failure to approve any treatment or medication is a violation of Plaintiff's Eighth Amendment rights.

47. Defendant IDOC's policy and practice to fail and refuse to treat inmates with mental illness, was and is in deliberate indifference to Plaintiff's constitutional rights and violates the prohibition against cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

48. At all relevant times, all the Defendants, jointly and severally, in failing to treat Plaintiff's mental illness, have acted under color of State law to deprive Plaintiff of his constitutionally protected rights including, but not limited to, the right to be free of cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages in an amount to be determined at trial;

2. Costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and

3. For such other and further relief as the Court may deem proper.

**SECOND CAUSE OF ACTION**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE TRADE PRACTICES ACT - 815 ILCS §505**
**<u>AGAINST DEFENDANT WEXFORD</u>**

49. Plaintiff hereby incorporates and realleges paragraphs 1 through 29 and 30 through 48 of this Complaint as though fully set forth herein.

50. At all times relevant to this Complaint, Wexford was a private corporation that contracted with IDOC and thus was engaged in the conduct of trade and commerce in Illinois.

51. Wexford's conduct of its business in Illinois directly and indirectly affects the people of the State of Illinois.

52. Wexford makes affirmative representations regarding its technological, administrative and medical services that it offers to entities such as the State of Illinois and its correctional facilities, as well as being able to provide exceptional quality medical care for the inmates of those facilities. In truth, Wexford's

representations could not be further from the truth, as demonstrated by the thousands of lawsuits brought against Wexford in the past three years.

53. While Wexford provides medical services, its misrepresentations and omissions exceed simple medical care, but extend to each area of purported expertise Wexford declares, including its offering of medical, behavioral health, pharmacy, utilization management, provider contracting, claims processing and quality management services, as represented on its website at www.wexfordhealth.com.

54. Wexford's mischaracterization of the quality of its services constitutes a deceptive act under Illinois law. Further, Wexford's false representations that its services are excellent while, in fact, inmates at facilities around Illinois suffer on account of the deliberate indifference of Wexford's personnel, constitute a deceptive trade practice under Illinois law.

55. Wexford materially misstates and/or omits relevant facts regarding the quality of the services it will provide to the State of Illinois, its correctional facilities, and the inmates within those facilities, with an intent that others, namely IDOC and other state agencies, will rely upon the statements (that is, renew Wexford's contract).

56. Plaintiff has suffered actual damages as a result of Wexford's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

57. Additionally, Wexford's misconduct is outrageous in that its deliberate indifference to inmates' medical care, all for the sake of a healthy profit margin, is carried out with a reckless indifference toward the rights of others.

58. Wexford's representations about the quality of medical care its personnel provides to inmates is belied by the pain and suffering experienced by the Plaintiff. Yet such

representations are sufficient to earn Wexford million-dollar contract renewals and perpetuate the inadequate medical care provided to inmates on a daily basis.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. Actual and compensatory damages in an amount to be proven at trial;

2. Costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and

3. For such other and further relief as the Court may deem proper.

**THIRD CAUSE OF ACTION**
**FAILURE TO PROVIDE ANY MEDICAL TREATMENT OR MEDICATION**
**AGAINST ALL DEFENDANTS**

59. Plaintiff hereby incorporates and realleges paragraphs 1 through 29, 30 through 48, and 49 through 58 of this Complaint as though fully set forth herein.

60. All the Defendants have knowledge of Plaintiff's mental illness.

61. Plaintiff has experienced total lack of medical at the hands of Defendants.

62. Upon information and belief, Defendants Baldwin, Meeks, Hinton and Wexford have a pattern and practice of intentionally and totally disregarding Plaintiff's need for timely administration of medications and treatment and other medical assistance when necessary.

63. As alleged above, the actions of Defendants Baldwin, Meeks, Hinton and Wexford are reflective of the general pattern and practice and result in each intentionally, through repeated acts of negligence, or with deliberate indifference to the serious medical needs of the Plaintiff, disregarding and failing to follow medical procedures and failing to take steps to ensure that Plaintiff's treatment plans are properly carried out, including providing timely administration of medications, and other

necessary medical treatment on a daily basis.

64. Each Defendant has denied the Plaintiff access to adequate medical treatment and knowingly disregarded excessive risks to his health and well-being by, among other things, (a) refusing to take corrective action measures; and (b) allowing and condoning the actions of the medical department in disregarding the medical needs of Plaintiff at Stateville.

65. Each of the above-described actions were in contravention of the policies and procedures in place at Stateville and contrary to sound medical care for treating and managing Plaintiff's mental illness. Alternatively, these Defendants have failed to institute proper policies and procedures at Stateville to ensure Plaintiff receives sound medical care.

66. Based on the misconduct of its staff, it would appear Defendant Wexford has implemented a cost-cutting policy which resulted in a reduction in staff, making it difficult for Wexford's medical staff to provide timely medical treatment and administration of medication.

67. Wexford had or has other practices and policies which directly cause the medical staff to provide inadequate administration of daily medications and treatments to Plaintiff.

68. Defendants' on-going deliberate indifference to Plaintiff's medical needs has deprived Plaintiff of his right to be free from cruel and unusual punishment as secured to him under the Eighth and Fourteenth Amendments to the United States Constitution, and has resulted in actual physical and medical harm to Plaintiff. WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   Order Defendants and their successors to ensure that Plaintiff  receives his daily medical treatment on a timely basis and in accordance with IDOC's and Wexford's medical policies and procedures;

2.   Consequential, compensatory, and any other damages that the Court may deem appropriate against the Defendants;

3.   Costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and

4.   For such other and further relief as the Court may deem proper.

### **DEMAND FOR A TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action.

Respectfully submitted,

**TONY LOVE**

By:_____ /s/  Paul O. Otubusin_____
        One of His Attorneys

Dated: October 31, 2018

Paul O. Otubusin, Esq.
ARDC No: 6205261
OTUBUSIN & ASSOCIATES, P.C.
77 West Washington Street
Suite 1204
Chicago, Illinois  60602
E-mail: drotubusin@otubusinlaw.com
(312) 251-1480
(312) 251-1481 (Fax)

## CERTIFICATE OF SERVICE

I, Paul O. Otubusin, an attorney, certify under penalties of perjury as provided by law pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, that on October 31, 2018, the foregoing *Plaintiff's Amended Complaint* was electronically filed with the Clerk of the Untied States District Court for the Northern District of Illinois, using the Court's ECM/CF Electronic Filing System, reflecting service upon all parties of record.

Respectfully submitted,

**TONY LOVE**

By: /s/ Paul O. Otubusin
One of His Attorneys


Dated: October 31, 2018

Paul O. Otubusin, Esq.
ARDC No: 6205261
OTUBUSIN & ASSOCIATES, P.C.
77 West Washington Street
Suite 1204
Chicago, Illinois 60602
E-mail: drotubusin@otubusinlaw.com
(312) 251-1480
(312) 251-1481 (Fax)

Page 14 of 14