# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TONY LOVE, | ) |
| | ) |
| Plaintiff, | ) Case No. 18-cv-06084 |
| | ) |
| v. | ) Hon. Steven C. Seeger |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tony Love spent over a month as a prisoner at Stateville Correctional Center in emotional distress, struggling to sleep and unable to sit still. *See* Second Am. Complaint ("Cplt."), at ¶ 24 (Dckt. No. 32). He suffers from bipolar disorder and other mental illnesses, and he alleges that he did not receive his prescribed medications during his incarceration. He claims that he requested medicine time and time again, but received nothing. After weeks of sleepless nights and restless days – interrupted by the voices in his head – he was transferred to the Robinson Correctional Center, another Illinois Department of Corrections ("IDOC") facility.

Love filed this lawsuit under section 1983, alleging that his treatment at Stateville violated the Eighth Amendment. He sued the IDOC and Wexford Health Sources, Inc., the company responsible for providing medical care at Stateville. He also sued three individuals who serve in the senior leadership ranks of the IDOC. Love alleges that the three individuals acted with deliberate indifference to his serious mental health issues. But for whatever reason, he didn't sue anyone who worked at the Stateville facility itself.

The individual Defendants – John Baldwin, Steve Meeks, and Melvin Hinton – now move to dismiss, arguing that Love fails to allege that they had any personal involvement in his lack of medical care. Defendants' motion to dismiss is granted in part and denied in part.

**Background**

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Plaintiff Tony Love has "suffered severe mental illness throughout his life." Cplt. ¶ 15. Before incarceration, he was diagnosed with bipolar disorder, and received a variety of prescription medications – Zoloft, Haldol, and Congentin, the complaint tells us – to treat his condition. *Id.* at ¶ 18.

Love was incarcerated at Stateville from July 18 to September 9, 2018, totaling 54 days. *Id.* at ¶¶ 5, 14. For 35 of the 54 days, he received no treatment and no medication, despite "repeatedly" requesting medical care for his mental illness. *Id.* at ¶ 19; *see also id.* at ¶¶ 20–23. He "kept writing to the Psychiatric Department at Stateville to request treatment and medication." *Id.* at ¶ 20. With his Counselor's help, he "filled out twelve medical forms," and "sent them . . . to the Stateville administration and the administration of the Illinois Department of Corrections." *Id.* at ¶ 22. But he "received no response." *Id.* at ¶ 23.

Five weeks without medicine took a toll. Love "could not sleep, suffered emotional distress, had jumping nerves, could not seat [sic] still, had headache [sic] and severe migraines," and was always pacing back and forth in his cell. *Id.* at ¶ 24. Love's behavior "was freaking

out" his roommate. *Id.* And for good reason. Love himself "feared that he could be a danger to himself and his roommate." *Id.* at ¶ 25. He was "hearing voices in his head all the time." *Id.*

After 35 days without treatment, Love finally received the care that he needed. *Id.* at ¶¶ 23, 26. On September 9, 2018, he was transferred to another IDOC facility (the Robinson Correctional Center), where he "began to receive treatment and medication." *Id.* at ¶¶ 14, 27.

A few days before leaving Stateville, Love filed suit against Stateville and the Illinois River Correctional Facility. *See id.* at ¶ 27; Dckt. No. 1 (postmarked Aug. 31, 2018). He later amended his complaint, and now sues the IDOC and three statewide officers: Defendants John Baldwin, Steve Meeks, and Melvin Hinton. *See* Dckt. No. 32. They are, respectively, the Director of the IDOC, the Chief of Health Services of the IDOC, and the Acting Statewide Mental Health Supervisor of the IDOC. *Id.* at ¶¶ 7–9. Love alleges that they acted with deliberate indifference to his serious medical needs by failing to approve treatment for his mental illness. *Id.* at ¶¶ 41–43. He claims that he did not receive his prescribed medication for over a month, even though he repeatedly "requested treatment and medication for his mental illness" from the IDOC administration. *Id.* at ¶¶ 19, 22.

Love alleges that a widespread departmental policy leads to the IDOC's repeated failure to provide inmates with necessary treatment. *Id.* at ¶ 30. Inmates allegedly need to file suit against the IDOC to receive the care they need. *Id.* Plaintiff points to the "prevalence of prisoner cases complaining of inadequate medical treatment" as evidence of the "recurring issues" in the Illinois prison system. *Id.* at ¶¶ 11–12. And he asserts that his claims are "indicative of the serious and prevalent problems with the IDOC's entire system of providing adequate medical treatment to prisoners." *Id.* at ¶ 11.

Baldwin, Meeks, and Hinton now move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6). *See generally* Defs.' Mot. to Dismiss (Dckt. No. 42).

## Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). At this early stage, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, a complaint must provide the defendant with fair notice of the basis for the claim and must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## Analysis

**I.  Section 1983 Claims for Damages Against Defendants in Their Official Capacities.**

Love seeks damages from the individual Defendants for actions and omissions in their official capacities. *See* Cplt. ¶¶ 7–9 (alleging that each Defendant acted in "both his individual and official capacities"); *see also id.* at ¶¶ 35, 41–43 ("Defendants Baldwin, Meeks and Hinton were, at all relevant times, employed by the State of Illinois and acted under color of law to deprive Plaintiff [sic] constitutionally protected rights."). The official capacity claims for damages cannot get off the ground.

The Court begins, as always, with the statutory text. Congress authorized suits against a "person" who acts under color of state law and deprives another person of his or her rights. *See* 42 U.S.C. § 1983. A State is not a "person," so the statute does not allow suits against the State.

*See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989). An official capacity claim against a state officer is, in reality, "no different from a suit against the State itself." *Id.* at 71. As a result, a plaintiff cannot bring an official capacity claim for damages under section 1983 against a state employee. "A suit against a state official in his official capacity is a suit against the state, and so a plaintiff may not bring a section 1983 claim against a state employee in her *official* capacity." *See Phillips v. Illinois Dep't of Fin. and Prof'l Regulation*, 718 Fed. Appx. 433, 434–35 (7th Cir. 2018) (emphasis in original); *see also Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kolton v. Frerichs*, 869 F.3d 532, 535–36 (7th Cir. 2017) ("[A] lawsuit against the Treasurer in his official capacity is really one against Illinois, and a state is not a 'person' suable under § 1983.").

Defendants skip over the threshold question under the statutory text, and jump right into constitutional analysis. Defendants argue that the Eleventh Amendment bars Plaintiff's claims for damages against them in their official capacities. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens[.]" *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Unless the State expressly waives sovereign immunity or Congress abrogates it, a State cannot be sued for damages by a private citizen in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Edelman*, 415 U.S. at 662–63. Immunity under the Eleventh Amendment applies to the State itself, as well as state agencies and agency officials. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under Section 1983."); *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005).

But even if the constitutional analysis is straightforward, the first step is to determine whether the statute authorizes the claim at all. This Court should not reach constitutional questions when statutory questions dispose of the issue. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988); *see also Blum v. Bacon*, 457 U.S. 132, 137 (1982) ("Where a party raises both statutory and constitutional arguments in support of a judgment, ordinarily we first address the statutory argument in order to avoid unnecessary resolution of the constitutional issue.").[1] And here, the statutory question is the first step and the last stop. "Because the statute permits suits only against a 'person,' not a state, Eleventh Amendment immunity is not at play." *Phillips*, 718 Fed. Appx. at 434.

Baldwin, Meeks, and Hinton are employees of an Illinois state agency, and section 1983 does not authorize a suit for damages against them in their official capacities. *See Arizonans for Official English,* 520 U.S. at 69; Cplt. ¶¶ 41–43. The Court therefore dismisses any official capacity claims for damages against Defendants Baldwin, Meeks, and Hinton.

## II. Section 1983 Claims for Injunctive Relief Against Defendants in Their Official Capacities.

In addition to damages, Love also seeks injunctive relief against the individual Defendants in their official capacities. He asks the Court to "[o]rder Defendants and their

---

[1] In earlier cases, the Seventh Circuit invoked the Eleventh Amendment when affirming the dismissal of section 1983 claims against state employees in their official capacity. *See, e.g., Mutter v. Rodriguez,* 700 Fed. Appx. 528, 530 (7th Cir. 2017) ("The Eleventh Amendment 'usually bars actions in federal court against a state, state agencies, or state officials acting in their official capacities.'") (citation omitted); *Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016) ("The Eleventh Amendment bars suit in federal court against nonconsenting states absent some specific types of congressional authorization not applicable here. Accordingly, all claims against the state officials in their official capacities were properly dismissed on Eleventh Amendment grounds."); *Brown v. Budz*, 398 F.3d 904, 917 (7th Cir. 2005) ("[T]he Eleventh Amendment . . . bars federal jurisdiction over suits against state officials acting in their official capacities when the state is the real party in interest."). This Court follows the most recent instruction from the Seventh Circuit in *Phillips* and in *Kolton*, and begins (and ends) its analysis under the statutory text.

successors to ensure that Plaintiff receives his daily medical treatment on a timely basis and in accordance with IDOC's and Wexford's medical policies and procedures." Cplt. at p.14, ¶ 1. His claim for injunctive relief fails as well.

A plaintiff can bring an official capacity claim for injunctive relief under section 1983. "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. at 167 n.14.). The Eleventh Amendment does not prohibit injunctive relief against state officials and state agencies. *See, e.g., Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that suits for prospective injunctive relief are not treated as actions against the State for immunity purposes). "Under *Young*, state officials may be sued in their official capacities for injunctive relief, although they may not be sued for money damages." *MSA Realty Corp. v. State of Illinois*, 990 F.2d 288, 291 (7th Cir. 1993); *Dean Foods Co. v. Brancel,* 187 F.3d 609, 613 (7th Cir. 1999) ("Under the longstanding doctrine of *Ex Parte Young*, a private party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law."). Courts conduct a "'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks federal relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

But the potential availability of a claim for injunctive relief does not mean that such a claim is appropriate here. An injunction is a forward-facing form of relief. It applies to ongoing or imminent harm. *See Federal Trade Comm'n v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 772 (7th Cir. 2019); *Lambert v. Broglin,* 946 F.2d 897, at *2 (7th Cir. 1991) (unpublished table

decision) ("Injunctive relief is inappropriate when a litigant alleges only past harm, unaccompanied by a 'continuing adverse effect.'"). "Because injunctive relief looks to the future, and is designed to deter rather than punish, relief will be denied if the conduct has been discontinued on the ground that the dispute has become moot and does not require the court's intervention." *See* 11A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2942 (3d ed. 2019). Damages can look back, but an injunction must look to the present, or look forward.

Love's allegations cannot give rise to injunctive relief. He no longer lacks medical care. He left Stateville and arrived at the Robinson Correctional Center in September 2018, and he began receiving the care that he needs. *See* Cplt. ¶ 14. He admits that he "began to receive treatment and medication" after arriving at the Robinson facility. *Id.* at ¶ 27.

Love filed two amended complaints after his transfer, and he does not allege an ongoing lack of medical care. *See* Dckt. Nos. 8, 32. He does not allege that there is a risk of an imminent loss of medical care, either. Instead, he alleges that he did not receive medical treatment during a fixed period of time at Stateville, which he left in September 2018. There is no need for an injunction compelling medical care when he has received medical care for more than one year. The Court therefore dismisses Plaintiff's claim for injunctive relief.

### III. Section 1983 Claims Against Defendants in Their Individual Capacities.

A plaintiff can bring a claim under section 1983 against state employees in their individual capacities. Suing the "person" is fair game – in fact, it is exactly what the statute says. *See* 42 U.S.C. § 1983; *see also Phillips*, 718 Fed. Appx. at 435 ("[A] plaintiff may seek damages under section 1983 from a state official suit in her *personal* capacity.") (emphasis in original). The Eleventh Amendment poses no bar to personal capacity claims. "[I]ndividual capacity suits

do not implicate the Eleventh Amendment's protections." *Ameritech Corp. v. McCann,* 297 F.3d 582, 586 (7th Cir. 2002). Indeed, "illegal actions by state officials are not the acts of the state," and thus "do not share in its immunity." *MSA Realty Corp.*, 990 F.3d at 291. So the Eleventh Amendment does not stand in the way of Love's claims against the three Defendants in their individual capacities.

An inmate has an Eighth Amendment right to be free from cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 101–02 (1976). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (cleaned up). For a prison official to be liable under the Eighth Amendment, a plaintiff must satisfy two requirements. *Id.* at 834. First, the alleged deprivation must be "sufficiently serious," viewed by an objective standard. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Hudson v. McMillian*, 503 U.S. 1, 5 (1992). And second, the prison official must have a "sufficiently culpable state of mind." *Id.* In prison-condition cases, a plaintiff can establish the requisite state of mind by showing "deliberate indifference" to inmate health or safety. *Id.* (citations omitted).

Defendants do not dispute that depriving Love of his medication for bipolar disorder satisfied the first prong. *See generally* Defs.' Mot. to Dismiss (Dckt. No. 42). Courts recognize that inmates must receive adequate medical care, and may not be denied all treatment of a serious psychiatric or psychological condition. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (citing *Meriwether v. Faulkner*, 821 F.2d 408, 413–14 (7th Cir. 1987)); *see also Farmer v. Brennan*, 511 U.S. 825 (1994); *Estelle v. Gamble*, 429 U.S. 97 (1976). "Allegations of refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir.

9

2011) (citing cases). So the complaint rises or falls on whether it sufficiently pleads that the individual Defendants acted with deliberate indifference.

To show deliberate indifference, the prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." *Farmer*, 511 U.S. at 837. Plaintiff must show that the prison officials knew about the substantial risk of harm, and refused to act to prevent that harm. *See id.*; *see also Dye v. Bartow*, 381 Fed. Appx. 604, 606 (7th Cir. 2010).

"For constitutional violations under § 1983 or *Bivens*, a government official 'is only liable for his or her own misconduct.'" *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009)); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). To recover damages against an official in a supervisory role, a plaintiff "may not rely on a theory of respondeat superior and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted); *see also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("The assumption underlying this choice of defendants – that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable – is a bad one."). Sitting atop the chain of command is not enough.

As the name itself suggests, deliberate indifference requires awareness of the issue at hand. In *Perez*, the Seventh Circuit explained that "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez*, 792 F.3d at 781 (quoting *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996)). That is, liability may attach after an official "is alerted" to an excessive risk to inmate safety or health. *Id.* at 782. An official can't turn a "blind eye" to a problem, and an

inmate's requests can't fall on "deaf ears," if the issue never reached the official's radar screen. *Id.* at 781–82.

At times, written communications to a senior official can give rise to a deliberate indifference claim. "[A] prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions" to give rise to a duty to act. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). But the communication must give the official "sufficient notice to alert him or her" to a risk to inmate health or safety. *Id.*; *see also Perez*, 792 F.3d at 782 (requiring "sufficient knowledge" by the prison official). The official must "realize[]" that a substantial risk of harm to the prisoner exists, "but disregard[] it." *Perez*, 792 F.3d at 781. "Once an official is alerted of such a risk," the refusal to act might give rise to a claim. *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

In *Gentry*, for example, the Seventh Circuit allowed an inmate's claim against the superintendent to survive summary judgment when the prisoner sent "many letters" to him, which the superintendent ignored. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("[I]t is a reasonable construction of Gentry's pled facts that Duckworth knew of the denial of scribe materials, even if only by the many letters Gentry sent him."). And in *Perez*, allegations that prison officials received plaintiff's grievances and ignored them was enough to allege that the prison officials obtained "actual knowledge of [Plaintiff's] objectively serious medical condition and inadequate medical care" through grievances and other correspondences, and "turned a blind eye" to the allegedly unconstitutional treatment. *Perez*, 792 F.3d at 782 (citing *Gentry*, 65 F.3d at 561).

Even then, a letter about "clearly localized, non-systemic violations" typically will not give rise to a duty to act. *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996). Senior officials cannot "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." *Id.* Top officials are "far from most of the day-to-day decisions that may have affected inmates," so inmate-specific issues generally do not give rise to liability for the leadership of an agency.

Here, Love's complaint alleges enough to state a claim against the three individual Defendants, but not by much. The body of the complaint contains almost no mention of them at all. The "Statement of Facts" spans 17 paragraphs, but lacks a single reference to Defendants Baldwin, Meeks, and Hinton, at least by name. *See* Cplt. ¶¶ 11–27. Plaintiff does not allege that they worked at Stateville or played any role in the decision to deny him medical care. *Id.*

Love devotes one paragraph to each individual Defendant in Count I, but the allegations barely move the needle. Each paragraph is functionally identical, and does little more than parrot-back the requirements for a deliberate indifference claim. Love claims that each Defendant "fail[ed] to approve any treatment or medication" until he went to the new facility. *Id.* at ¶¶ 41–43. But he does not squarely allege in those paragraphs that they received a request for approval in the first place. Alleging that the Defendants "fail[ed] to approve" his requests for medical care doesn't add much unless the requests reached their desks. *Id.*

Plaintiffs "need not lard their complaints with facts." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Notice pleading suffices, and it is enough to plead knowledge "generally." *Id.*; *see also* Fed. R. Civ. P. 9(b). But plaintiffs cannot state a claim through the rote recitation of the elements of a claim, either. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds

of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted) (cleaned up).

Even so, Love does allege that he "kept writing to the Psychiatric Department at Stateville to request treatment and medication." *See* Cplt. ¶ 20. And more importantly, he "wrote several grievances to [sic] his Counselor to the administration of the Illinois Department of Corrections *and their chains of command*." *Id.* at ¶ 21 (emphasis added). He reiterates in a separate paragraph that he requested help from the "chains of command" of the IDOC. *Id.* at ¶ 19. And he "filled out twelve medical forms" – twelve forms – and "sent them through his Counselor to the Stateville administration *and the administration of the Illinois Department of Corrections.*" *Id.* at ¶ 22 (emphasis added).

The complaint does not squarely allege that he sent those materials to any of the individual Defendants. But Plaintiff does allege that each individual Defendant "knew that denying and delaying mental illness treatment was an excessive risk to Plaintiff's health," and nonetheless failed to approve treatment. Cplt. ¶¶ 41–43. He also alleges that "[a]ll the Defendants have knowledge of Plaintiff's mental illness." *See* Cplt. ¶ 58. While the details are scarce, a general allegation of knowledge is enough for now. *See Burks*, 555 F.3d at 594. At this early stage, the inferences flow in Plaintiff's favor.

Read as a whole, and in a light favorable to the Plaintiff, the complaint alleges that he repeatedly wrote to the leadership of the IDOC about his medical condition. He sent pleas for help up the "chains of command" of the IDOC, and the individual Defendants sat at or near the top of the chain. *Id.* at ¶¶ 20, 7–9. But his pleas for help went unanswered. Defendants had "knowledge of Plaintiff's mental illness," but "fail[ed] to approve treatment for Plaintiff." *Id.* at

13

¶¶ 58, 41–43. A possible inference (but not the *only* possible inference) is that Defendants learned about Love's requests for help, but they did nothing. For now, the complaint lives to fight another day.

## IV. Failure to Provide Any Medical Treatment or Medication.

In Count III, Love alleges a separate cause of action in his Second Amended Complaint titled "Failure to Provide Any Medical Treatment or Medication Against All Defendants." Cplt. at p.12. He alleges that the three individual Defendants "have a pattern and practice of intentionally and totally disregarding Plaintiff's need for timely administration of medications and treatment and other medical assistance when necessary." *Id.* at ¶ 60. He claims that they showed deliberate indifference to his medical needs. *Id.* at ¶¶ 61, 66.

Count III is duplicative of Count I, which also alleges that the individual Defendants acted with deliberate indifference to his medical needs. *See id.* at ¶¶ 32, 36, 40–45. There is no need for duplicative claims, and Love does not explain what added value Count III has to offer. For that reason, Count III is dismissed.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. The Court grants the motion to dismiss the official capacity claims against Defendants Baldwin, Meeks, and Hinton, but denies the motion to dismiss the individual capacity claims. Count III against the individual Defendants is dismissed as duplicative.

Date:  March 13, 2020            _____
                                 Steven C. Seeger
                                 United States District Judge